**Thomas MACKEY, parent of a disabled student, Thomas M.; Barbara Mackey, parent of a disabled student, Thomas M., Plaintiffs,**

v.

**BOARD OF EDUCATION FOR THE ARLINGTON CENTRAL SCHOOL DISTRICT; The State Education Department, Defendants.**

No. 03 CIV.5607(CM)(LMS).

United States District Court, S.D. New York.

March 9, 2005.

Rosa Lee Charpentier, Kingston, NY, for Plaintiffs.

Jeffrey J. Schiro, Raymond C. Kuntz, P.C., Bedford Village, NY, for Defendants.

## DECISION DISPOSING OF THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

At issue on these cross motions for summary judgment under the Individuals with Disabilities in Education Act (IDEA) is the last in a series of disputes between the Mackey family and the Arlington Central School District concerning the education of T.M., the Mackeys' disabled son. The parents seek a determination that the District is responsible for the cost of. educating their son at Old Forge Center of Lynn University for the 2001–2002 school year. The District seeks a determination that it is not liable for T.M.'s tuition at Old Forge.

I conclude that there is no basis to overturn the State Review Officer's determination concerning the adequacy of the District's IEP for T.M. for the 2001–2002 school year. There is, therefore, no basis to reimburse the parents for their unilateral placement of T.M. at Old Forge other than pendency.

Unfortunately for the Mackeys, I am constrained to conclude that the issue of pendency is not properly before me in this action, because they did not file a timely appeal from the SRO's final determination that Old Forge was not T.M.'s proper pendency placement. Through a strange quirk, however, the pendency issue is before the Court in the companion case filed under Docket No. 02 Civ. 8360, a case that otherwise deals with the 2000–2001 school year (and that is still alive only because it has been remanded to this court to deal with one small item). The pendency issue will be addressed on the merits in a decision filed simultaneously herewith in that action, which is before the Court on remand from the United States Court of Appeals for the Second Circuit.

For ease of reference: The decision on remand from the Second Circuit will be referred to as *Mackey IV*. This decision is *Mackey V*. The Second Circuit's decision is *Mackey III*. The decision of this court that was affirmed in part and reversed in part by *Mackey III* is *Mackey II*. Judge Brieant's decision on the earliest of the disputes between the Mackeys and the Arlington Central School District is *Mackey I*.

### Factual Background

For the factual background concerning T.M.'s education in the years 1999–2000 and 2000–2001, the reader is referred to the Second Circuit's decision in *Mackey v. Board of Education for the Arlington Central School District*, 386 F.3d 158 (2d Cir. 2004) (*Mackey III*). Further to that decision, this Court has now determined that the State Review Officer who was handling the Mackeys' appeal from an IHO decision upholding the school's contention that it could provide a fair and appropriate public education for T.M. in the public school setting during the 1999–2000 school year should have reached his decision overturn-

ing the IHO by December 9, 2000. *See Mackey v. Board of Education for the Arlington Central School District,* No. 02 Civ. 8360(CM) (March 9, 2005) (*Mackey IV*).

We now turn to the 2001–2002 year. As had been true the previous two years, the District prepared an IEP and determined that T.M. should participate in three academic special classes (global studies, math and English), two special classes for life skills, and two periods of community-based work study programs. Schiro Aff. ¶ 33 and attached exhibits. The Mackeys again rejected the District's recommended program, for essentially the same reasons they had rejected the program for 2000–2001.

However, the Mackeys did not plan to send their son to Maplebrook for the 2001–2002 school year, either. The parents decided—again unilaterally—to place T.M. in the Enrichment Program at the Old Forge Center of Lynn University. The Mackeys notified the District of their decision on September 5, 2001, and simultaneously demanded an impartial hearing so that they could secure tuition reimbursement for this placement.

Old Forge, like Maplebrook, has not been approved by the New York State Education Department to instruct students with disabilities.

The Mackeys asked for an impartial hearing at the same time they rejected the IEP. On October 20, 2001, fifty-five days after they made their request, the District appointed Kenneth L. Steward from the State's rotational list to serve as the impartial hearing officer in connection with the dispute over T.M's placement for the 2001–2002 year. Within days of that appointment, on November 9, 2001, the SRO ruled against the District for the 1999–2000 school year (which led to the filing of a complaint and Judge Brieant's opinion in *Mackey I*).

Shortly after the IHO was appointed, the parents moved for a declaration that Old Forge, a different private school but a private school nonetheless, was T.M's "stay put" placement for the 2001–2002 academic year. They also sought a declaration that the District was responsible to cover the cost of the parents' unilateral private placement in "private school" under the pendency rules.

The hearing on the issue of pendency took place on January 16, 2002, the date having been chosen because it was the first acceptable date on which the parents' representative could be present. Only three weeks later, on February 8, 2002, the IHO rendered a decision against the parents. He concluded that he did not need to address the broader issue of whether the decision in *Mackey I* made the District responsible, on a pendency basis, for any and all private school placements because, on the record before him, Old Forge was not similar enough to Maplebrook to qualify as a placement "similar" to Maplebrook. The differences he cited between Maplebrook and Old Forge were that Old Forge was a residential placement (T.M. lived at the school rather than at home) while Maplebrook had not been residential, and that Old Forge placed T.M. at a local hardware store, in a work assignment with no direct continuous educational component, unlike Maplebrook. (Schiro Aff. Ex. K).

The IHO stated that the cost of Maplebrook was the "....principal reason for the change of location for T's schooling." (Ex. K at second decisional page). In the instant proceeding's Rule 56.1 statement filed by plaintiffs (which is patently defective for failing to include a single citation to the record, perhaps because the record of proceedings relevant to this year was not filed under this docket number, but was filed as part of the record in the case relating to the 2000–2001 year), the plain-

tiffs assert that T.M. could no longer attend Maplebrook because he had aged out of its high school program and the school would not create a special program just for him. The IHO's decision makes no reference whatever to T.M.'s inability to attend Maplebrook because he had allegedly aged out of its program.

The Mackeys appealed this interim decision to the SRO on March 26, 2002, pursuant to 8 NYCRR § 279.8(c), which authorizes immediate review of interim IHO decisions involving pendency placements. (The record does not reveal why it took the parents so long to lodge their appeal, but it is fairly typical of their actions). The SRO's decision was due thirty days later, but he did not affirm the IHO's pendency determination until December 13, 2002 (Schiro Aff. Ex. L).[1]

In his comprehensive (if unduly delayed) decision, the SRO noted approvingly the Mackeys' argument that pendency "... does not mean that a student must remain in a particular site or location" (Ex. L at 2–3, citing *Concerned Citizens v. Board of Education of the City of New York*, 629 F.2d 751 (2d Cir.1980)). And the SRO rejected the District's argument (also advanced here) that the pendency attached only with respect to subsequent litigation related to the 1999–2000 school year, not to any subsequent year (Ex. L at 3, citing *Pawling CSD v. Schutz*, 290 F.3d 476 (2d Cir.2002)). The SRO specifically noted that T.M.'s pendency could not change until a new placement was established, either by agreement of the parties, by determination of an SRO or by determination of a court. Thus, until the SRO determined that T.M. should have been educated at Arlington High School for the 2000–2001

school year (a determination that was made on June 20, 2002, after the 2001–2002 school year had concluded), Maplebrook was T.M.'s pendency placement.

The SRO then went on to deal with the Mackeys' argument that Old Forge should be deemed their son's pendency placement because it offered him an education equivalent to the Maplebrook program. The SRO concluded that the Mackeys had failed to meet their burden of proving that the two schools' educational programs were substantially similar. Noting that, "The record is very limited," (Ex. L at 4)—a profoundly correct statement—the SRO observed, as had the IHO, that (1) Maplebrook was a day school and Old Forge a residential school, and (2) Maplebrook "reportedly" had an on-campus vocational program while Old Forge had an off-campus work program with no job coach or school staff involved. Because of these dissimilarities, the SRO concluded that Old Forge was not T.M.'s pendency placement and dismissed the appeal.

Like the IHO, the SRO mentioned nothing about any alleged inability of T.M. to attend Maplebrook because he had aged out of the school. There is no indication in his decision that any such argument was even raised, though the issue is so fundamental that it would be surprising if it were argued and ignored.

The Mackeys did not immediately appeal the SRO's decision dismissing the appeal from the denial of their pendency motion. Instead, they awaited the SRO's determination of their appeal, taken October 21, 2002, from the IHO's September 8, 2002 decision concluding that the District could have provided T.M. with a fair and

1. Significantly, the SRO's long-delayed decision came only after the Mackeys filed the lawsuit that led to the opinions in *Mackey II* and *Mackey III*. Although that action sought reimbursement for T.M.'s Maplebrook tuition for the school year 2001–2001, there were also allegations of undue delay with regard to the pendency decision for 2001–2002 and a request that this Court simply annul the IHO's determination.

appropriate public education for the 2001–2002 school year. The SRO affirmed the IHO's merits determination on March 31, 2003. This action was filed on July 29, 2003.

## DISPOSITION

1. **The SRO's Decision of March 31, 2003, Which Found that the District's IEP Provided T.M. With an Appropriate Education, Is Sustained.**

The District bears the burden of proof with respect to the appropriateness of its recommended program for T.M.. *See M.S. v. Board of Education of the City School District of Yonkers*, 231 F.3d 96, 102 (2d Cir.2000). I cannot agree with plaintiffs' contention that the SRO improperly placed this burden on them. The SRO specifically concluded that the District had met its burden. *See* Schiro Ex. N at 11 ("Respondent has established that the CSE recommended an appropriate program for petitioners' son.").[2] After reviewing the record, I find that the SRO did not abuse his discretion in so concluding.

■ Generally two questions are relevant to a district court's review of a challenged IEP under IDEA: whether the state complied with the procedural requirements of IDEA and whether the challenged IDEA was reasonably calculated to enable the child to receive educational benefits. *M.S.*, 231 F.3d at 102.

■ An IEP must normally state the child's present levels of educational performance, the annual goals for the child, including short-term instructional objectives, the specific educational services to be provided to the child and the extent to which the child will be able to participate in regular educational programs; the transition services needed for a child as he begins to leave the school setting; the proposed initiation date and duration date for the proposed services; and objective criteria, evaluation procedures and schedules for determining, on at least an annual basis, whether instruction objectives are being achieved. *Walczak v. Florida Union Free School District*, 142 F.3d 119, 121 (2d Cir.1998). The IHO and the SRO addressed each of these factors in turn in their respective opinions, and concluded, based on the record before them, that the IEP satisfied IDEA's procedural requirements.

■ The parents strenuously contest the District's claim that a preponderance of the evidence establishes the adequacy of the proposed placement. Here again, given the deference this court must give to the findings of the SRO, all of which are amply supported by evidence, I can only conclude that the IEP proposed by the District for 2001–2002 was adequate to afford T.M. a free and appropriate public education. The administrative proceedings were thorough, at both the IHO and the SRO level. The decisions of both administrative officers were detailed and thoughtful. As noted by the SRO: to address T.M.'s primary area of deficit in mathematics, the CSE recommended his participation in a special math class for the year (R. 84–86, Ex. SD–6). The class is a two year program that provides Regents-level instruction to disabled students in basic algebra, order of operation, fractions, basic graphing, coordinate geometry, and polynomials. (R. 222–223, 331–335). The

---

2. The SRO did indeed go on to say that the parents had not demonstrated that Old Forge was an appropriate placement, but this observation placed no erroneous burden on them. Where parents have unilaterally placed a child in a private school, they bear that bur-

den. *M.S., supra.* at 104. I need not deal with that issue, because I conclude that the District has shown that the 2001–2002 IEP was designed to provide T.M. with an appropriate education.

class is capped at twelve students and the teacher indicated that the other students in the class had math needs similar to T.M.'s. The teacher would have been assisted by an aide, and there would have been no difficulty implementing his program and testing modifications. (R 213–14, 337, Ex. SD–6).

To address T.M.'s reading and written language deficits, the CSE recommended his enrollment in special classes for English and global studies. The English class offered disabled students multisensory instruction in many of the same topics as their non-disabled peers. The class would have consisted of just five students, and the teacher would have had the assistance of a teaching assistant. Again, there would have been no difficulty implementing the recommended program and testing modifications. (R. 606–625, Ex. SD–6). The special global studies class would have provided Regents-level instruction in numerous important topics, which T.M. would have studied in a setting of only four students, with a teacher and teaching assistant. (R. 321–346, Ex. SD –45).

Finally, the CSE recommended that T.M. participate in two periods of life skills instruction and two periods of community-based vocational training. T.M. would have received instruction in matters important to daily living, such as balancing a checkbook, reading maps, placing calls from pay phones, counting money, comparing prices, looking for an apartment, and proper nutrition. (R. 392–458). Again, T.M. would have benefitted from having a teacher and a teaching assistant.

The SRO's conclusions are remarkably similar to his conclusions for the 2000–2001 school year—no doubt because there are numerous similarities between the District's IEP's for T.M. for the two school years—and those conclusions are all supported by evidence in the record. Plaintiffs obviously do not find the District's evidence persuasive, but that is not the standard by which this court reviews administrative findings.

Plaintiffs raised many of the same objections that they had raised to earlier IEPs. In particular, the Mackeys object (again), as they have in years past, that T.M. was inappropriately classified as "learning disabled." This persistent argument was discussed extensively in this court's decision in *Mackey II*, which was affirmed by the Second Circuit last year. The SRO appropriately described the circumstances of T.M.'s birth and subsequent medical history. He also indicated numerous areas in which T.M. displayed deficits. (SRO Opinion, Ex. N at e). While the SRO acknowledged that T.M "may not have a learning disability," based on a neuropsychological evaluation performed ten months after the IEP was formulated, his conclusion that the classification was "not inappropriate" was supported by the boy's IQ assessment, which contained a marked differential between his verbal and mathematical abilities—a well-known indicator of potential learning differences. Contrary to plaintiffs' contention, the SRO relied not only on T.M's IQ test from 1999, but also from the Wechsler Individual Achievement Test (WIAT) administered in April 2001, which also showed a large gap between the boy's verbal and mathematical abilities. Moreover, as I recognized in *Mackey II*, the record is barren of support for the contention that classifying T.M. as traumatic brain injured or multiply disabled, or by any other name, would have resulted in the recommendation of a different educational program for him. And the SRO so recognized (Ex. N. at 6).

The parents' presentation in support of their motion for summary judgment is wholly conclusory. It reiterates various conclusions in the SRO's opinion and asserts that they are "wrong" without refer-

ence to the evidence that supports those conclusions. The clearest example of the problems with their challenge to the SRO's findings is the statement that T.M.'s performance during the 1998–99 school year—three years before the year at issue—"establishes the inappropriateness of the District's placement." Charpentier Aff. at 10. Plaintiffs' complaints about the inadequacy of T.M's program three years earlier and his performance therein do not afford this court any basis to overturn the reasoned conclusions of the SRO for the 2001–2002 school year—any more than it afforded this court or the Second Circuit a basis to overturn the reasoned conclusions of the SRO on the same issue for the 2000–2001 school year. As the SRO found, the record contains no evidence that the behavioral issues that impeded T.M.'s ability to learn three years earlier had continued to the time when the 2001–2002 IEP was prepared.

■ It was also not improper for the SRO to conclude that the District's failure to perform an independent psychiatric evaluation was inconsequential where the parents had shared a private assessment and where the student had been the subject of a number of neurological and neuropsychological evaluations. IDEA does not compel a school district to perform every sort of test that would arguably be helpful before devising an IEP for a student.

The parents' position is that the SRO's rejection of their various assertions was error. In reiterating old arguments to this court, they fail to address the degree of deference owed to the findings of the SRO—especially here, where the SRO carefully documents the parents' objections and explains, with appropriate references to the record, why he has chosen to overrule them. The objections made by the parents to T.M.'s 2001–2002 IEP are virtually identical to those made to his 2000–2001 IEP. The arguments propounded today are no more supported, and are no more persuasive to this court, than they were to this court and to the Second Circuit in *Mackey II*. Plaintiffs have certainly not suggested to the Court any reason why T.M.'s situation changed so much between 2000–2001 and 2001–2002 that the result in this case should be different than it was—on a remarkably similar record—in *Mackey II*.

The March 31, 2003 decision of the SRO to the effect that the IEP provides for an appropriate public education for T.M. is affirmed. This renders it unnecessary for me, as it was unnecessary for the SRO, to reach any conclusions concerning the parents' alleged failure to demonstrate that Old Forge was an appropriate placement for T.M.

**2. The Mackeys' Claim for Reimbursement for T.M.'s Old Forge Tuition under the Pendency/Stay–Put Doctrine Cannot Be Considered in This Action.**

The fact that the Mackeys are not entitled to tuition reimbursement because of the District's failure to provide for an appropriate public education for their son for the 2001–2002 school year should, but does not, end the inquiry. In the alternative, the Mackeys assert that they are entitled to be reimbursed for the full school year's tuition because Old Forge should have been declared T.M.'s pendency placement while these proceedings were pending. Since the SRO's final decision on the merits did not issue until March 31, 2003, a holding that Old Forge was T.M.'s "stay put" placement would entitle his parents to be reimbursed for the entire 2001–2002 school year.

The District, noting that the parents chose to argue the issue of pendency at the outset of the hearings over the 2001–2002

school year, and that the IHO and SRO issued separate decisions dealing solely with that issue, argue that this Court lacks subject matter jurisdiction to consider whether Old Forge was T.M.'s proper pendency placement, because the Mackeys failed to take a timely appeal from the SRO's decision that it was not. Alternatively, they argue that this court should affirm the decision on the merits.

■ IDEA does not contain a statute of limitations. The Second Circuit, borrowing from the New York Civil Practice Law and Rules, has held that an aggrieved parent has four months to bring an action pursuant to 20 U.S.C. § 1415. *Adler v. Education Department*, 760 F.2d 454, 456–57 (2d Cir.1985). A party's right to seek review under Section 1415 accrues when he receives notice of a final decision by the Commissioner. *Gerasimou v. Ambach*, 636 F.Supp. 1504, 1509 (E.D.N.Y.1986).

■ It is beyond cavil that the Mackeys waited more than four months after the SRO denied their request for an order denominating Old Forge as T.M.'s "stay put" placement to file the instant action. On its face, defendant's argument appears to have merit.

But plaintiffs allege that they were not required to take an appeal of the SRO's decision within four months, because they had "appealed" the pendency determination two months before the SRO issued his decision, as part of their complaint in the action concerning the 2000–2001 school year (02 Civ. 8360). The Mackeys also argue that this court has already concluded that it was futile to require exhaustion of administrative remedies on this particular issue.

For the benefit of the Court of Appeals—where this case is surely headed—let me here try to explain its incredibly confusing procedural posture where the issue of 2001–2002 pendency is concerned.

On October 21, 2002, the Mackeys timely appealed from the SRO's denial of their request for tuition reimbursement for the 2000–2001 school year. Tucked inside that complaint (in an action bearing the number 02 Civ. 8360) was the following paragraph:

Plaintiffs are aggrieved by the finding of an impartial hearing officer regarding the student's 'status quo' placement. Plaintiffs right to a decision on appeal of that finding has been violated as the State Review Officer failed to issue a final decision within the statutory timeline of 30 days. On March 26, 2002, after obtaining the unfavorable decision from the hearing officer on this issue, plaintiffs initiated an appeal to the State Review Officer. To date, no decision has been issued. Plaintiffs herein assert that exhaustion of that administrative remedy must be waived on grounds of futility. Plaintiffs herein seek full remedy for violation of the IDEA's 'status quo' provision...

And in the *ad damnum* clause, amid all the requests for relief dealing with the 2000–2001 school year, is the following request for relief:

4. Annul the hearing officer's decision as received by petitioners on February 20, 2002, in its entirety.

Fifty-five days after this premature request for relief was filed with the court, the SRO issued his opinion. Plaintiffs at that point had exhausted their administrative remedy concerning the 2001–2002 pendency issue, but they filed no appeal with this court.

The parties litigated the 02 Civ. 8360 case as though it were simply and solely about the 2000–2001 school year. They made the usual motions for summary judgment. In *Mackey II*, I concluded—after inferring that there had been absolutely no administrative review of the pendency issue for the 2000–2001 school year (See

*Mackey II* at pages 12–13)—I concluded that the Mackeys were excused from exhausting administrative remedies with respect to their pendency claim for the 2000–2001 school year—a claim that, on the record before me, did not appear to have been raised at all in the administrative context. (*Id.* at 14). One looks in vain in the *Mackey II* decision for any finding concerning exhaustion of the *2001–2002* pendency claim. As far as I can recall, plaintiffs did not press me for any such ruling in *Mackey II*. I can state categorically that I did not make one.

Furthermore, plaintiffs could hardly have relied on the *Mackey II* decision to excuse their failure to take an appeal from the SRO's December 13, 2002 ruling, because *Mackey II* was not decided until August 1, 2003—almost four months after the statute of limitations for appealing the SRO's ruling had expired.

From the moment the SRO handed down his decision—that is, from and after December 13, 2002—the IHO's decision, which was the subject of the request for relief in 02 Civ. 8360, ceased to have any relevance. It was the SRO's decision that was operative. Futility was no longer an issue, because administrative remedies had been (belatedly) exhausted. Plaintiffs had two choices: amend the complaint in 02 Civ. 8360 to seek to overturn the SRO's pendency decision for 2001–2002, or file a new action. Inexplicably, they did neither.

Raising the 2001–2002 pendency issue in a wholly separate action—one that has never been consolidated with this action,

for any purpose—does not raise the issue in this action. The allegations of the complaint in 02 Civ. 8360 have to be resolved in that action; I cannot graft them onto this case, even though, as a matter of simple logic, they belong here.

But the Mackeys have another argument. They contend that, in his final decision disposing of the merits of the 2001–2002 school year, the SRO brought up anew and reaffirmed his pendency decision of the previous December, which, they claim, makes an appeal from that decision in the context of this case timely.

This argument is not only completely without merit, it is frivolous. In the final decision that was appealed by the filing of this action, the SRO had the following to say about the pendency:

> Petitioners seek reimbursement for the education cost of their son's placement at Old Forge. Petitioners also request a determination that Old Forge is the student's pendency placement. As noted above, *that issue was resolved in Application of a Child with a Disability, Appeal No. 02–031, and will not be considered in this Appeal* (34 C.F.R. § 300.510[d] ).

Exhibit N at 4 (emphasis added). So there was absolutely no reconsideration of the 2001–2002 pendency issue in connection with the decision that is under review in this action.[3]

Moreover, when, on March 31, 2003, the SRO indicated that the issue of pendency for the 2001–2002 school year "was [al-

---

**3.** The Mackeys also claim that the IHO's decision on the merits of the 2001–2002 placement and the parents' request for tuition reimbursement was "appealed" in the complaint filed with respect to the 2000–2001 year, 02 Civ. 8360. I have read the complaint in that action, and the ad damnum clause seeks no relief whatever with respect to the IHO's September 8, 2002 decision. I realize the frustration experience

by both parents and counsel in these cases, but filing a single action covering multiple years—some of which are in an interlocutory phase, some final—is extremely confusing to the court. In the context of 02 Civ. 8360, where no relief was sought with respect to the IHO's most recent decision, it is frivolous to suggest that the filing of that complaint constituted some sort of interlocutory appeal.

ready] resolved" and "will not be considered on this appeal," there were still several weeks left for the Mackeys to appeal from the decision that DID finally resolve the pendency issue at the administrative level—the SRO's December 13, 2002 decision—before the statute of limitations ran. They failed to do so.

The SRO's December 13, 2002 ruling was the final administrative decision on the issue of whether Old Forge could be considered T.M's pendency placement for the 2001–2002 school year. This court never found that futility excused plaintiff from exhausting administrative remedies on that issue for that particular year; the plaintiffs *did* exhaust their administrative remedies, and while his action was unduly delayed, the SRO's issuance of a final decision trumped any premature "appeal" taken by the Mackeys from the decision of the IHO. I am forced to conclude that this court cannot address the pendency argument in the context of this action. I do believe it may be appropriately considered in 02 Civ. 8360, and so—despite the procedural mess that has been made of this issue by both sides, but especially by plaintiffs—I will address it on the merits there.

This disposes of all pending claims in the instant action. The Clerk of the Court is directed to enter judgment dismissing the complaint, and to close the file.